IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| David Bradford, | ) | Civil Action No.: 9:11-cv-00462-RBH |
| Petitioner, | ) | |
| v. | ) | **ORDER** |
| M.L. Rivera, Warden, | ) | |
| Respondent. | ) | |

Petitioner, a federal prisoner proceeding *pro se*, brought this suit pursuant to 28 U.S.C. § 2241. *See* § 2241 Petition [Docket Entry 1]. Petitioner is currently incarcerated in Estill, South Carolina.[1]

Respondent filed her [Docket Entry 15] Motion for Summary Judgment on May 31, 2011. Because Petitioner is proceeding *pro se*, the court entered an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on June 1, 2011, advising Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to adequately respond. Thereafter, Petitioner timely filed his [Docket Entry 21] Response in Opposition to the summary judgment motion, to which Respondent replied on July 15, 2011, [Docket Entry 24].

This matter is now before the court with the [Docket Entry 27] Report and Recommendation ("R & R") of United States Magistrate Judge Bristow Marchant[2] filed on October 14, 2011. In his R & R, the Magistrate Judge "recommended that the Respondent's motion [should] be granted, and

---

[1] The court notes that the Magistrate Judge stated, and the docket reflects, that Petitioner is incarcerated at FCI-Estill. However, in his [Docket Entry 29] Objections, Petitioner contends that he is "incarcerated at the Federal Prison Camp (FPC) in Estill, South Carolina." Obj. at 1.

[2] This matter was referred to Magistrate Judge Marchant pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and Local Rule 73.02(B)(2)(c), D.S.C.

that Petitioner's claim [should] be dismissed, with prejudice." R & R at 7 (emphasis removed). On October 24, 2011,[3] Petitioner filed his Objections to the R & R. Also, on October 31, 2011, the court received [Docket Entry 31] Additional Attachments to those Objections.

## Standard of Review

The Magistrate Judge makes only a recommendation to the court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a timely filed, specific objection, the Magistrate Judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## Background

The record reflects that the United States District Court for the Eastern District of Michigan

---

[3] Filing date under *Houston v. Lack*, 487 U.S. 266 (1988) (stating that a prisoner's pleading is deemed filed at the moment of delivery to prison authorities for forwarding to district court). While the Objections' envelope did not contain a date-stamp by the prison mail room, the court notes that Petitioner did date and sign the Objections on October 24, 2011. Accordingly, the court will consider the Objections filed as of that date.

sentenced Petitioner, on February 28, 2002, to an 84-month term of imprisonment for Conspiracy to Distribute Cocaine and Marijuana, a violation of 21 U.S.C. § 846, and Laundering Monetary Instruments, a violation of 18 U.S.C. § 1956(h). *See* Resp't Exh. 1 [Docket Entry 15-1] at 1 & Attachment A.  As the Magistrate Judge noted, the relevant factual background of this case is set forth in *United States v. Bradford*, 623 F. Supp. 2d 849, 851-52 (E.D. Mich. 2009),[4] as follows:

> [Petitioner's] sentence was set forth in a March 14, 2002 judgment, in which the Court expressly addressed [Petitioner's] ongoing health issues and need for treatment by "order[ing] that [Petitioner's] report date b[e] deferred for six (6) months, or as further ordered." (3/14/2002 Judgment at 2.)  This judgment further directed [Petitioner] to "surrender to the United States Marshal for this district . . . in six months as designated by the Bureau of Prisons, or as further ordered." (*Id.*)
>
> Over the remainder of 2002, the U.S. Probation Office in Detroit received correspondence from [Petitioner's] physician in Atlanta, Georgia, Dr. Ian Crocker, indicating that [Petitioner's] cancer had progressed, that his disease was incurable, and that he had a limited life expectancy of "1-2 years at best." (*See* Dr. Crocker's 11/14/2002 Letter.)  United States Probation Officer Stacey A. Fokken informed the Court in a July 9, 2002 letter that she had requested additional documentation of [Petitioner's] medical condition, but it d[id] not appear that any such materials were forthcoming.  Nonetheless, in its response to [Petitioner's] present motion, the Government states that "in light of [Petitioner's] alleged exceedingly limited life expectancy, no action was taken with respect to having the Bureau of Prisons designate an institution for service of [Petitioner's] sentence until the summer of 2008." (Government's Response Br. at 4.)
>
> Over the years between 2002 and 2008, [Petitioner] continued to undergo medical treatment for cancer and related health conditions, including one or more surgeries.  He also found work, ultimately purchasing a tow truck and starting his own towing business.  In letters to the Court dated August 27, 2008, [Petitioner] and

---

[4] In his Objections, Petitioner argues that it was inappropriate for the Magistrate Judge to insert this recitation of background facts in his R & R, which was originally set forth in *Bradford*, 623 F. Supp. 2d 849. *See* Obj. at 2.  However, the court notes that it may take judicial notice of its own records in Petitioner's prior case. *Colonial Penn. Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (noting that "[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records") (internal quotations and citations omitted); *Aloe Creme Labs., Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970) (holding that "[t]he District Court clearly had the right to take notice of its own files and records").  More importantly, nowhere in his Objections does Petitioner appear to assert that these background facts are inaccurate or incorrect, except for as discussed specifically below, *see infra* note 5.

3

> his wife have recounted the positive contributions he has made during this period, both to his family and to the surrounding community.
>
> By memorandum dated July 30, 2008, United States Pretrial Services Officer Mary Ann Atkinson advised the Court of the developments in this case since [Petitioner's] sentencing in 2002. According to this memo, [Petitioner] remained in regular contact with Pretrial Services Officer Michelle Eubanks of the Northern District of Georgia, and "remain[ed] compliant with all conditions of bond." (7/30/2008 Pretrial Services Memorandum at 1.) The Court was further advised that [Petitioner's] "cancer is currently in remission," but that he was "experiencing brain leakage in his ear" and was "fearful if he is required to report to prison, he will be victimized due to his frail health." (*Id.*) In light of these developments, Pretrial Services requested the Court's assistance, asking (i) whether the U.S. Marshal's Service should be notified to designate [Petitioner] to begin serving his sentence, (ii) whether additional documentation should be sought regarding [Petitioner's] medical condition, or (iii) whether a hearing should be held.
>
> Upon reviewing this memorandum, the Court requested that Pretrial Services contact the BOP and have [Petitioner] designated, either to an FCI or a medical facility as deemed appropriate. Following this contact, the BOP instructed [Petitioner] to report to FCI Estill in South Carolina on September 4, 2008. Through the present motion, filed on December 18, 2008, [Petitioner] requests that the charges against him be dismissed or that he be re-sentenced to time served, in light of the BOP's delay in designating him to a federal institution to begin serving his sentence, and in light of the steps he has taken since his 2002 sentencing to turn his life around and make a positive contribution to his family and society.

The court in the Eastern District of Michigan extended, by stipulated orders, Petitioner's report date to allow for the filing and disposition of the above-discussed motion. *See Bradford*, 623 F. Supp. 2d at 852 n.3. Ultimately, that court determined that Petitioner's motion was "premature, as well as [] directed at the wrong court-namely, the sentencing court, rather than the district court for the district in which he [was] to report for incarceration." *Id.* at 855. Also, that court noted that "[t]o the extent [Petitioner] s[ought] the dismissal of the charges against him, rather than credit toward his sentence, the Court agree[d] with the Government that there is no known basis in the law for such relief." *Id.*

4

at 855 n.7.[5]

On May 4, 2009, Petitioner voluntarily surrendered to FCI-Estill to begin service of his sentence. *See* Resp't Exh. 1 at 3. Petitioner has a current projected release date of May 19, 2015, via Good Time Release. *See id.* at 2.

In his pending § 2241 Petition, Petitioner asserts that his designation and imprisonment were "inexplicably delayed" by the Bureau of Prisons ("BOP") for over seven years, that this delay was through no fault of his own, and that he is therefore erroneously being denied six years and five days of time served toward his federal sentence.[6] *See* § 2241 Petition at 4. For relief, Petitioner seeks credit for the period of time he "erroneously spent at liberty" and his "immediate release." *Id.* at 5.

## Discussion

The calculation of a term of imprisonment is governed by 18 U.S.C. § 3585. Section 3585(a) provides that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." *See also Binford v. United States*, 436 F.3d 1252, 1255 (10th Cir. 2006) ("A federal sentence does not commence until a prisoner is actually received into federal custody for that purpose."). In addition, § 3585(b) governs prior custody credit and provides as follows:

---

[5] In his Objections, Petitioner argues that he "never sought to dismiss [the charges against him]. Only to dismiss or modify [the] sentence imposed by the Honorable Gerald E. Rosen." Obj. at 3-4. While the District Court for the Eastern District of Michigan did indicate in *Bradford*, 623 F. Supp. 2d 849, that Petitioner sought to dismiss the charges against him, the undersigned will accept as true, for purposes of the instant § 2241 Petition only, Petitioner's assertion that he sought only to modify his sentence in that previous action.

[6] As the Magistrate Judge noted on page 4 of the R & R, it is undisputed that this six year, five day period of time has not been credited to Petitioner's federal sentence.

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences -
>
> > (1) as a result of the offense for which the sentence was imposed; or
> >
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

In our case, the BOP computed Petitioner's sentence based on a commencement date of May 4, 2009, with a twenty-one (21) day prior custody credit for previous time spent in jail. *See* Resp't Exh. 1 at 2.

In the R & R, the Magistrate Judge determined that "Petitioner ha[d] not shown that he [was] entitled to credit toward his federal sentence for any time he spent while he was out on bond, but reporting to U.S. Probation Service." R & R at 7. Upon review, the undersigned agrees. First and foremost, Petitioner is not entitled to any custody credit under the statutory language of § 3585(b), which awards credit only for "time . . . spent in official detention," for the period of time he spent at home prior to his sentence's commencement date. *See Reno v. Koray*, 515 U.S. 50, 58 (1995) (stating that "credit for time spent in 'official detention' under § 3585(b) is available only to those defendants who were detained in a 'penal or correctional facility,' and who were subject to BOP's control" (internal citation omitted)); *see also United States v. Insley*, 927 F.2d 185, 186 (4th Cir. 1991) (holding that § 3585(b)'s term "'official detention' means imprisonment in a place of confinement, not stipulations or conditions imposed upon a person not subject to full physical incarceration" (quoting *United States v. Woods*, 888 F.2d 653, 655 (10th Cir. 1989))).

Petitioner cites *Ninete v. Thomas*, 607 F. Supp. 2d 1201 (D. Or. 2009), and argues in his Objections that he should be entitled to credit toward his sentence because the commencement of

6

his incarceration was delayed due to alleged "Government[al] neglect" and "cannot be attributed to" Petitioner. Obj. at 5. Upon review, the court overrules this objection. As an initial matter, other circuits have held that a delay in the commencement of a sentence does not give a defendant the right to credit for the time spent at liberty. *See United States v. Barfield*, 396 F.3d 1144, 1147-48 (11th Cir. 2005)[7] (holding that "a convicted person . . . who has yet to serve any part of her sentence, is not entitled to credit for time spent erroneously at liberty when there is merely a delay in executing her sentence"); *Leggett v. Fleming*, 380 F.3d 232, 235 (5th Cir. 2004) (holding "that a prisoner is not entitled to a credit when there is merely a delay in the execution of one's sentence"); *see also Woodman v. Shartle*, No. 1:10CV1818, 2010 WL 5420143, at *3-*5 (N.D. Ohio Dec. 22, 2010) (denying the petitioner's request for credit when the commencement of his sentence was delayed from November 2004 to October 2009); *Goins v. Hickey*, No. CV207-135, 2008 WL 3819830, at *6 (S.D. Ga. Aug. 13, 2008) (denying the petitioner's request for credit when the commencement of his sentence was merely delayed). Moreover, as the Magistrate Judge noted in his R & R, our case is distinguishable from the *Ninete* case cited by Petitioner. In *Ninete*, the court gave that defendant credit for the time he spent at liberty after concluding that he "was not imprisoned in a timely manner due to the mistakes of the Government," and further that the delay was "not attributable" to the

---

[7] The facts presented in the present case are notably similar to those presented in the *Barfield* case, where the Eleventh Circuit denied the defendant's request for credit against her sentence for time spent at liberty. In *Barfield*, the sentencing court deferred the defendant's sentence for six months upon a motion by the defendant in which she indicated that "she had fully contracted the AIDS syndrome and had approximately six months to live." *Barfield*, 396 F.3d at 1146 (internal quotations omitted). Over eight years passed without the defendant beginning service of her sentence, and during this time the defendant claims "she regularly reported to Pretrial Services and informed it of any changes in her health." *Id*. Only after the defendant's former boyfriend informed the court that the defendant was actually in good health did the court order defendant to begin serving her sentence in 2003. *Id*. The defendant argued that she should be entitled to credit against her sentence for those years spent at liberty. The Eleventh Circuit ultimately rejected the defendant's request, and held as follows: "[A] convicted person, like Barfield, who has yet to serve any part of her sentence, is not entitled to credit for time spent erroneously at liberty when there is merely a delay in executing her sentence. A delayed sentence, like Barfield's, is still subject to be executed." *Id*. at 1147-48.

defendant. *Ninete*, 607 F. Supp. 2d at 1204. Here, on the other hand, the delay in designating a facility to start Petitioner's sentence was attributable to and resulted from, at least in part, Petitioner's own medical condition, i.e., his cancer diagnosis. In addition, Petitioner in the case at bar did not file a motion to self-surrender,[8] nor is there any evidence or allegations that he took any action to self-surrender or begin his sentence until the BOP notified him that it had designated a facility. Accordingly, the court concludes, as did the Magistrate Judge, that Petitioner has not shown that he is entitled to any credit for the time he spent at liberty before commencement of his sentence.

## Conclusion

The court has thoroughly reviewed the entire record, including the R & R and Objections, and the applicable law. For the reasons stated above and by the Magistrate Judge the court hereby overrules all of Petitioner's objections and adopts and incorporates the R & R of the Magistrate Judge. Accordingly, Respondent's Motion for Summary Judgment is **GRANTED**, and Petitioner's claim is **DISMISSED**, *with prejudice*.

**IT IS SO ORDERED.**

                                        s/R. Bryan Harwell
                                        R. Bryan Harwell
                                        United States District Judge

Florence, South Carolina
November 18, 2011

---

[8] The undersigned finds this distinction significant. The district court in *Ninete*, in determining that the delay in incarceration was not attributable to that defendant, relied on the fact that the defendant had filed a motion to self-surrender in an attempt to begin his sentence, and that "[d]espite [the defendant's] efforts, government officials [still] failed to act for more than ten months." *Ninete*, 607 F. Supp. 2d at 1204. Other district courts have since noted the importance of that motion to self-surrender in denying a similar request for credit for time spent at liberty. *See*, *e.g.*, *Woodman*, No. 1:10CV1818, 2010 WL 5420143, at *4 ("In the present case, Petitioner has not presented evidence that he tried to self-surrender, prior to receiving his surrender instructions in late 2009. Although a person is not legally required to report to jail, this factor was material to the *Ninete* court because it made it possible for the court to calculate the time to be credited." (internal citations omitted)).